*Margin note:*

MAY TERM, 1838.

Haile
v.
Palmer & wife.

---

## HAILE v. PALMER & WIFE.

1. To render sworn copies of papers, purporting to be records, admissible, it must be shown that, by the laws of the State where such records are made, the papers are required to be recorded.

2. Quere? In detinue, (as in trover,) where the inception of the cause of action was before marriage, and the action survives to the wife, *must* husband and wife join? Majority of the court think it certain that they *may* join. TOMPKINS, Judge, dissenting.

3. In cases of this kind, the declaration must show on its face the interest of the wife; and therefore a count, stating that husband and wife were possessed as of their own goods, and that defendant detained them, &c. is bad.

*J. Scott,* counsel for appellant:

The declaration contains two counts: the first in right of the wife; the second in the joint right of both husband and wife. To this declaration six pleas were filed: 1. *Non detinet.* 2. Property in the defendant. 3 and 4. That plaintiffs were never lawfully joined in marriage.

5 and 6. The statute of limitations. To all which issues were joined. On the trial of the cause below, the plaintiffs gave in evidence, to support the several issues, certain papers as sworn copies, to wit: 1. A paper purporting to be a copy of the certificate of the marriage between Mr. Palmer and wife. 2. A paper purporting to be the certificate of the appointment of Lucy Haile, (now Lucy Palmer,) as executrix of Ferguson Haile, deceased. 3. A paper purporting to be a copy of the appointment of the said Lucy as tutrix of the children of Ferguson Haile. 5. A paper purporting to be a copy of the last will and testament of Ferguson Haile, made in the State of Louisiana. 6. A paper purporting to be a copy of the inventory of the estate of the said Ferguson Haile, also made in Louisiana. To the reading of these papers the defendant objected, but was overruled by the court, and they were read in evidence to the jury, to which the defendant filed his several bills of exceptions. The jury found a general verdict for the plaintiff, and assessed the aggregate value of the slaves, and gave general and aggregate damages for the detention thereof.

The defendant below moved for a new trial, on reasons filed, sustained by affidavits of surprise by the introduction of testimony by the court below, but which the court overruled. The defendant below then moved in arrest of judgment, for reasons filed and on the record, which the court below also overruled. The defendant below then prayed for and took an appeal, and now here has assigned sixteen errors in the record and proceedings in the court below, and which are substantially as follows:

1. That the declaration is insufficient in law for the plaintiffs to have their action. Much certainty and accuracy are required in the description of the things demanded in detinue, and much greater than in trover and replevin —1 Saund. Plead. 433; 2 Saund. Rep. 74, a.; 12 Mod. 3; Buller's Nisi Prius, 50; Willes's Rep. 120. The goods sought to be recovered must be identified by some means —Coke Lit. 286, B. The plaintiff must prove the goods precisely as laid in the declaration—Bul. N. P. 51; 2 Rolls's Abr. 703. Where the wife is made a party, her interest must appear on the face of the declaration; but here it does not appear she has any interest—1 Bacon's Abr. 502; 2 Bos. & Pul. 405; 2 Mod. Rep. 45–6. So by the marriage, she being in possession, all the right and interest vests in the husband, and he alone can sue—1 Bac. Abr. 479–80; Coke Lit. 321.

2. That the declaration contains two counts, which by law cannot be joined. Distinct and inconsistent causes of action cannot be joned in the same declaration—see 1 Henry Black. Rep. 108, &c. Both for contracts and torts, the action must be brought in the name of the party whose legal interest is affected—1 Chitty's Plead.; 3 do. 45–6; 8 Term Rep. 331–2. The court will not take cognizance of distinct and separate claims of different persons in one suit—1 East Rep. 226–7; 1 Chit. Plead. 8; do. 50, 51; 1 Saund. Rep. 291–9; 2 do. do. 116, n. 2; Bac. Abr. Action, C.; nor can the plaintiff enter a *nolle prosequi* as to the faulty counts—1 Henry Black. 108.

3. That the suit is brought in the joint names of Palmer and wife, when this suit ought to have been brought by Palmer alone. If too many persons be made co-plaintiffs, the objection, if it appears on the record, may be taken advantage of either on demurrer, arrest of judgment, or in error—1 Chit. Plead. 24; Bos. & Pul. 156; 2 Saund. 116, a; Cro. Eliz. 473. The husband alone must bring replevin or detinue, for those actions admit and affirm a property in the wife at the time of the marriage, which, by consequence, must have vested in the husband—Bac. 502; 3 Term Rep. 613. If a man detains the goods of a *femme couverte* which came to his hands before marriage, the husband can only bring detinue, for the law transfers the property to the husband—2 Bac. Abr. Detinue, 317; 1 Chit. Plead. 119; Bul. N. P. 50; 1 Chit. Plead. 60–61; Espenasse's Nisi Prius, 593; 1 Salk. Rep. 114; 1 Henry Blackstone's Rep. 108; 2 Willes's Rep. 424; Cro. James, 644; 2 William Blackstone's Rep. 1236; and if the possession be laid in both, it is ill, because if both were possessed, the law will transfer in point of ownership, the whole interest of the husband—2 Bac. Abr. Detinue, 317.

4. That there is a misjoinder on the part of the plaintiffs, and that the verdict and judgment is for joint damage, when, by the record, Lucy could, as the wife, have sustained no damage. In detinue, to recover personal chattels of the wife, the husband must sue alone—1 Chit. Plead. 60, 61; 1 Henry Black. Rep. 108; nor can damages be assessed to the husband and wife jointly—2 Wm. Black. Rep. 1236.

5. That the capias in detinue improperly issued, because there was no affidavit filed according to law—see Statute, 224, sec. 1; see form, 3 Chit. Plead. Appr. 364. This error, however, is but little relied on.

6. That there is error in this, that the jury did not

find all the issues separately, but gave a general verdict, aggregate value, and general damages. All the issues made up in the cause, must be found by the jury separately; a general finding is not sufficient—1 Mo. Rep. 361, State v. Gaither; do. do. 256, Ferguson v. Seawell; do. do. 260, Ellis v. Loumier; do. do. 401, Fenwick v. Logan; do. do. 421, Collier v. Easton; 3 do. 390, Jones v. Snedecor; 1 Semi Ann. Rep. 1836, 27, Foster & Foster v. Nowlin; 6 Bac. Abr. 654. The residue of this error will be considered in the next error assigned.

7. That the jury did not sever the value of each slave, and damages for the detention of each slave, but found the aggregate value of all, and general damages. The nature of this action requires that the verdict and judgment be such that a specific remedy may be had for the goods detained, or a satisfaction in value for each several parcel, in case they or either of them cannot be returned, and therefore, where the action is for several chattels, the jury ought, by their verdict, to assess the value of each separately—1 Chit. Plead. 121, 122; 2 Wm. Black. Rep. 853-4; 2 vol. Mo. Rep. 45; Bul. N. P. 57; nor can the omission be supplied by writ of inquiry—1 Chit. Plead. 121, 122; 10 Co. 119, B.; 1 Salk. Rep. 206.

8. That the value of each slave and the damages for the detention of each is not stated in the declaration or found in the verdict, and no judgment or execution could go thereon. The separate value of each article must be stated either in the declaration, (and then a general finding would refer to it,) or must be stated separately in the verdict—2 Wm. Black. Rep. 853; Bro. Detinue, 4; 2 Rolls's Rep. 96; Co. Entries, 189; Rastell, title Detinue; 1 Chit. Plead. 120-1; 1 Salk. Rep. 206; Ld. Raymond, 59; 1 Sel. N. P. 670; Co. Lit. 286, B.; Esp. N. P. 595. It is not believed that the provisions of the sixth section of the Statute, page 224, reaches this case; that provides for a writ of inquiry where no value or no damages are assessed. But this does not reach or cure the case where wrong value and wrong damages are assessed, and the finding is not an omission, but a commission of error; and the case of Burton v. Robinson, in Thomas Raymond's Rep. 124, decided 17 Chas. II. was decidedly overruled in the case of Herbert v. Waters, found in 1 Salk. Rep. 206, and upon the principle of the case of Rose and Mercer, his wife, v. Bowler & Read, in 1 Henry Black. Rep. 108; even if a writ of inquiry could have been awarded at the time, it is now too late after an exception and appeal taken.

9. In permitting the certificate of marriage to go in evidence to the jury as proved. Wherever the law appoints offices, and requires a thing to be recorded, then a copy of the record, properly certified, or a sworn copy, is evidence—1 Stark. Evi. 154; Bul. N. P. 229; Bac. Abr. ti. Evi. F. But here there is no evidence that the paper in question was other than a private paper, for the laws of Louisiana (Civil Code, p. 32, sec. 101–2–3,) give justices, priests, and ministers, power to marry; on license from the judge, and they must be celebrated in presence of three witnesses of full age, and an act made thereof, signed by the person marrying the parties, and witnesses; but no record is required to be made thereof. Again, there is no proof given of the execution of the original or its absence accounted for, nor is there any proof of the identity of the parties which the law requires—Roscoe on Evidence; 114; Douglass's Rep. 162. No copy of any paper, or record of any paper, or sworn copy of any paper, is evidence, if not made by public authority—Roscoe's Evi. 114; Peak's Evi. 231; 1 Esp. Rep. 213. Even a duly certified copy of a register of a foreign chapel, is not admissible in our courts to prove a marriage abroad—Roscoe's Evi. 114; 1 Esp. Rep. 353; 1 Coxe's Cases, 275; nor does our own Statute alter this, for there is no proof that, by the law, ordinance or custom, a register of marriage was required to be made in Louisiana—Statute, 251, sec. 10–11; and if so, still no other proof but the oath of the keeper of the record will establish the copy—Statute, 251, sec. 11. The acts of Congress of 26th May, 1790, and 27th April, 1804, have nothing to do in this matter. This paper then was improperly admitted.

10. That the court erred in permitting the two certificates, as executrix and tutrix, to be given in evidence; no evidence is to be admitted but what the issue justifies—3 Black. Com. 366–7; Roscoe's Evi. 36; 2 Campbell, 391; and here there was no issue on those points. Again, those papers are a part of the record of the matter to which they relate, and the whole record must be produced if offered as records—1 Stark. Evi. 156. By the laws of Louisiana, (Civil Code, page 98, sections 328–9–30,) tutors are bound to take the oath and give security, &c.; hence, the record offered is but in part, and improperly received. The whole record, and not a part, must be exemplified or copied—2 Mo. Rep. 118, Philipson v. Bates.

11. That the court erred in permitting the certificate

of marriage, and the certificate of appointment as tutrix, and also the certificate of appointment of executrix, to be read in evidence on the testimony of the witness, &c. If the papers in question be matters of record, then the primary evidence is the production of the proceedings themselves—Roscoe's Evi. 2, 3; 6 Esp. Rep. 80; nor does the absence of the record appear to be accounted for, which is necessary to let in the secondary evidence—2 Cranch's Rep. 238; Roscoe's Evi. 2, 3; Bul. N. P. 293. The copy of a record must be proved by a witness who has examined it line by line with the original—Roscoe's Evi. 54; 1 Campbell, 469. And it must appear (which here it does not) that the record from which the copy was taken was seen in the hands of the proper officer—Roscoe's Evi. 55; 1 Stark. Evi. 182–3. If the parish court had a seal, it must be used to authenticate its record—Roscoe's Evi. 54; 1 Stark. Evi. 155; and the seal must be proved—8 Term Rep. 317; 3 East's Rep. 221; 1 Stark. 152–3–4.

12. That the circuit court erred in permitting the copy of the paper, purporting to be the will of Ferguson Haile, to be given in evidence in the testimony, &c. The Statutes of Missouri, 619, sections 19 and 20, have provided how wills are to be made, and what steps are necessary to make them evidence, to control or govern any property in this State, (page 619, sections 19 and 20.) And it is contended that no will, made out of this State, can give rights in this, till properly recorded as the Statute requires, (page 619, section 20;) not even the original will, much less a sworn copy, (page 619, section 20.) A case in point will be found in 10 Wheaton, where a copy was rejected because not done in conformity with the State law—10 Wheaton Rep. 465, and 2 Cranch, 238. If, then, a duly certified copy, made by an authorized officer, would not be evidence, unless recorded here, how can a sworn copy be evidence? Not even a copy by an officer of the court would be evidence here —1 Stark. Evi. 154. It is a general rule that, of the original, if of a public nature, a sworn copy may be given in evidence; but where the paper, when produced, would require support from collateral proof, a copy is not admissible—1 Stark. Evi. 156–7; 1 Strange, 126; 3 Salk. 154. And the witness must swear he compared it with the original, and that it was in the proper place of deposite, &c. —1 Stark. Evi. 158; Bac. Abri. F. and cases there. In England, the doctrine that the probate of a will is only good as to personalty, rests on the ground that their ec-

clesiastical courts had nothing to do with real property—1 Stark. Evi. 230–31; see the decisions in similar cases in Stark. Evi. 231–2, in the several courts there cited; 4 Bibb, 484; 3 John. Cases, 234; 1 Philips's Evi. 434. The court will not notice judicially the jurisdiction of inferior or foreign courts—Roscoe's Evi. 40; Willes, 37, 38; Cowper's Rep. 174; 3 East, 221; Peak, 17. Even the original could not be read without proof of authentication—Roscoe's Evi. 59.

13. That the court erred in permitting the copy of the inventory, &c. to go to the jury—see Statute, page 46, section 3. That all the inventories are required to be on oath. See, also, page 47, section 18, how far copies of inventories are made evidence. And as this error rests on principles with the wills, the court are referred to the same authorities as last above, with this remark, that it had no relation to any issue between the parties.

14. That the court erred in not granting a new trial. Mistake or surprise is a good ground for a new trial—3 Black. Com. 390; 3 East's Rep. 221–2; 1 Sel. Practice, 483; 4 Dallas's Rep. 112–13; Wm. Black. Rep. 296. Lord Mansfield said the trial by jury could not subsist at the present day without authority somewhere to grant a new trial—1 Sel. Prac. 483. The general rule laid down is this, "doing justice to the parties and attaining the ends of justice"—1 Sel. Prac. 483; Lucas's Rep. 202. In granting new trials, the court have known no limitation but justice—6 Term Rep. 638. As where all the lights have not come in—1 Sel. Rep. 488; 3 Wilson's Rep. 38. Discovery of new evidence, though in the parties' custody, good cause, (1 Sel. Prac. 489,) and this on oath of attorney—2 Wm. Black. Rep. 955. If a witness conceals himself in plaintiff's house—1 Sel. Prac. 496; Burrow's Rep. 328. Or if verdict be obtained by trick—1 Sel. Prac. 490; 11 Mod. Rep. 141; Burrow, 353. Or for the absence of counsel—1 Salk. Rep. 645. It is no contempt of court for a by-stander to refuse to be sworn—1 Wm. Black. Rep. 37. They are beneficial and ought to be granted liberally—1 Wm. Black. Rep. 464. They are discretionary—1 Dallas's Rep. 234. And are always granted when the matter appears to the court to deserve a re-examination—1 Dallas's Rep. 234; 12 Mod. Rep. 336, 347. Absence of witnesses, good cause—12 Mod. Rep. 439. From all which it is contended the court erred in not granting a new trial on the reasons filed and sustained by the affidavit.

15. That the court erred in refusing to arrest the judg-

ment, and in overruling the motion therefor on the reasons filed. If there should be different causes of action joined in the same declaration, or the plaintiff should sue in different capacities, the judgment will be arrested—1 Sel. Prac. 500, 501. A verdict will cure a title defectively set forth, but not a defective title—1 Sel. Prac. 500; 2 Willes's Rep. 258, 261; Salk. Rep. 365; Ld. Ray. Rep. 1382. In this case the title set forth is defective upon its face. The plaintiff must show that he has the whole legal title in himself—1 Chit. Plead. 3, 5, 6; 7 Mod. Rep. 116. In all cases of contract, if it appears on the face of the pleadings that there are others who ought to join, it is fatal, whether in demurrer or in arrest of judgment—1 Chit. Plead. 7; 2 Strange, 1146; 1 East, 496; Saund. 153, n. 1; 1 B. and P. 67, 74. And the rule is the same in torts. The court will not take notice of different and separate claims or liabilities in the same suit—1 Chit. Plead. 8; 1 East's Rep. 226–7. If too many persons be made plaintiff's, the action will fail—1 Chit. Plead. 8; 3 Bos. and Pul. 235; 5 East, 225; 2 Term Rep. 282–4; 5 Term Rep. 711; 2 Saund. Rep. 116, n. 2.; or defendants, if it appears on the pleadings—1 Chit. Plead. 31; 7 Term Rep. 352. Actions for torts must be brought in the name of the person whose legal right has been affected—1 Chit. Plead. 45; 8 Term Rep. 330. By the marriage all the personal property of the wife in possession becomes the husband's, and he then only can sue alone—1 Chit. Plead. 60, 61. The consequence of a mistake in the proper parties in the case of husband and wife, are the same in actions of contract and tort, and if the wife be improperly joined in the action, and the objection appears from the declaration, the defendant may demur, move in arrest of judgment, or support error—1 Chit. Plead. 64; 1 Salk. Rep. 114, 119; 2 Black. Rep. 1236; Sel. N. P. 244, 250. In detinue for the goods of the wife before marriage, the husband must sue alone —1 Chit. Plead. 119, 60, 61; Bul. N. P. 50; 2 Bac. Abr. 317. There is then a misjoinder of plaintiffs, parties in this action, and the court erred in not arresting the judgment.

16. The sixteenth error is general, and includes all the special assignments, and is submitted on the authorities and errors cited thereon.

*Brickey*, counsel for defendant:

In the investigation of this case, it seems to me, the only material points for the consideration of this court,

MAY TERM,
1838.

Haile
v.
Palmer & wife.

are the following: 1. Did the circuit court err in permitting the plaintiff to introduce as evidence the following: 1. The marriage certificate of Martin Palmer and Lucy Haile. 2. A copy of the last will of Ferguson Haile, deceased, former husband of Lucy Palmer. 3. The inventory of the estate of Ferguson Haile, showing the negroes to be the same described in the plaintiff's declaration.

2. Did the court err in refusing a new trial?

3. Did the court err in refusing to arrest the judgment?

The written evidence of the plaintiff, before referred to, all depends upon the same principle. 1. The attestation of George W. Peats, the parish judge of the parish of Claiborn, in the State of Louisiana, under his hand and official seal, according to the laws of Louisiana. 2. All the papers offered in evidence by the plaintiff, were proved to have been examined and compared with the original, in the office of the said parish judge, by Doctor Hugh Walker, a witness for the plaintiff.

I contend, in the first place, if the above papers are considered to be records, then the certificate and seal of the parish judge is not only good in law, but the highest and best evidence that can be required. The parish judge in Louisiana, according to their law, is judge of probate—has a seal of office, but no clerk, he himself being clerk of his own court, and therefore his attestation under his official seal, as such, of any papers being considered record in his office, is made evidence not only in Louisiana, but in each of the United States; and that he is the only person authorized to give authenticated copies—see Stark. Evi. p. 178, and note A., also, p. 164; act of Congress, 1790, and 1804; also, p. 184, note 2. These authorities are referred to on the presumption that the papers given in evidence were public records; but if they are to be considered public documents, then they were properly admitted as strictly legal testimony; because it is a general rule that whenever the original is of a public nature, a sworn copy is admissible in evidence. All public documents which cannot be removed from one place to another, may be proved by means of a copy, proved on oath to have been examined and compared with the original—see Stark. Evi. vol. 1, p. 166, 167, 169, 162, 178; 2 Bac. Abr. p. 611; see 15 Johns. Rep. 226, (Miner v. Boneham;) 3 Johns. Rep. 429, (McCarty v. Sherman;) Peak's Evi. p. 92, 99. In this case it is proved by the witness that he himself applied to the parish judge for the papers, to wit: the marriage *certificate*, the *will* and *inventory;* and while at the office of the

judge, he, the said witness, at the request of the parish judge, did assist him in comparing and examining the copies here given in evidence, with the original in the office, and proves them all to be exact copies of the originals, which seems to bring this evidence within the rules and reasons of the principles of the law above laid down. Indeed, no other rule will apply, for this most obvious reason: If the parish judge has no clerk of his court, he being his own clerk, having an official seal, and he authenticates any of his proceedings or public documents appertaining to his office, under his seal of office, as judge as well as clerk of that court, and this should not be held admissible evidence, then a sworn copy must be legal evidence, otherwise it would be impossible to ever obtain any evidence from this source, which cannot be the fact. The papers here made evidence are either records or public documents. If records, then the parish judge, having a common seal of office, although his court has no clerk, is the proper and only officer to give exemplified copies of papers and records in his office, and such copies being authenticated under the seal of that court, must be admissible evidence. If they are considered public documents, then the law is clear, and too well settled to be controverted, that sworn copies of all such public documents are admissible legal evidence in any court in the United States. Hence, the circuit court decided correctly in permitting these papers to be read to the jury. By reference to the record, the court will see the applicability of all this evidence under the issues joined in this action. The defendant's first plea is *non detinet;* 2d, property in the defendant; 3d and 4th, put in issue the marriage of the plaintiff, which, in fact, are more properly pleas in abatement than in bar, for the finding of that issue either way determines nothing with regard to the right of the property in controversy; yet the plaintiffs, having taken issue upon those pleas, were prepared to sustain them. The 5th and 6th pleas involve the statute of limitations.

Under these several issues, then, all the evidence here introduced by the plaintiffs was material and pertinent, and, as I conceive, proper and legal evidence to go to the jury; the marriage certificate to establish the marriage of the plaintiffs; the will of Ferguson Haile; the inventory, &c. together with the parol evidence given on the trial to show the right of property in the plaintiffs, and that their right was not barred by the statute of limitations. With regard to the second point for the consid-

eration of this court, ought the circuit court to have granted a new trial? The two principal grounds for this motion, are generally, 1. Some misdirection or misruling on the part of the court; or, 2. Error or misconduct on the part of the jury—1 Stark. p. 412, 413. It is not pretended there was any misconduct on the part of the jury. The record does not show that the court below rejected or excluded any evidence offered on the part of the defendant either written or verbal. The only question then is, did the court misrule any point in favor of the plaintiffs? This brings up the documentary evidence before referred to, and authorities before cited go to show that the circuit court decided correctly in admitting that evidence to go to the jury.

The court will not grant a new trial where substantial justice has been done, and the record in this case, omitting to show the parol testimony which was given for the defendant as well as the plaintiffs, renders it impossible for this court to see the force and effect of that evidence coupled with such as has been preserved on the records. By reference to the only bill of exceptions taken by the plaintiff, it will be seen that much other evidence was given; nor does the record show that all the evidence given in the cause has been preserved. How then can this court determine, upon only a partial view of the case, that any injustice has been done?

The defendant and his counsel made an affidavit that they were taken by surprise when Doctor Hugh Walker was introduced as a witness for the plaintiffs, and urge that as a reason for a new trial, because the witness had not been summoned by the plaintiffs. This would seem to be no good reason for a new trial, because the defendant did know, or ought to have known, that the plaintiffs came prepared to make out their case, and this they certainly had a right to do, by any and every legal means in their power. The defendant was also apprised of the documentary evidence intended to be used by the plaintiffs, and it could not be material to him whether those papers were admitted on their own authenticity or by parol evidence of their being true copies by a witness who had examined and compared them with the originals, as in this case. This cannot be that kind of surprise for which the law would authorize a new trial, for, by the same rule, every one engaged in a law suit, and who might be confident of success, could, with truth, make an affidavit that he was surprised that the jury should find a verdict against him, or that his opponent had proved

something he was not aware of. It will be seen by the affidavits that the party does not pretend he has discovered new or additional evidence since the trial, of which he had no previous knowledge. But he supposes or believes he could have found some one to have discredited the plaintiff's witness, if he had known what the witness would have deposed. The objection to the documents which were read in evidence, is not that those papers are not true, or do not contain the truth, but that they were not properly authenticated; this is alleged to have been the opinion of the counsel, and that he communicated this opinion to his client. How often does it happen that the most learned counsel finds himself mistaken in a point of law? We find the most learned judges frequently differing in opinion. Is it extraordinary then that lawyers at the bar should differ, and be mistaken? Surely this reason, or any argument founded upon it, can have but little weight with this court.

The doctrine of affidavits and new trials, is considered at some length in the case of Hanly v. Blanton—1 vol. Mo. Rep. p. 49; Bunn v. Hoyt, 3 Johns. Rep. 255; 3 Johns. Rep. 84; 2 Caine's, 129. There are several other reasons assigned as cause for a new trial to be granted, but from the authorities above cited, when compared with the record in this case, no one of them seems to apply. That the damages are excessive, the facts of the case are the other way; and here again it is utterly impossible for the court to determine the value of the slaves or their yearly hire, except by the description given in the declaration, for the want of all the parol testimony which was given to the jury, and omitted on the record. Judging then from the ages and number of slaves stated in the plaintiff's declaration, (being the only criterion on the record,) the finding of the jury would really appear too small; and further, as to the damages or hire of the negroes, this court can form no conception without the parol evidence which was before the jury, and upon which they gave their verdict. From the bill of sale given in evidence by the defendant, showing his pretended title to the property in dispute, it will be seen that he claimed title to the slaves as far back as the 20th February, 1833. And if he only had the negroes in his possession from that time up to the trial in November, 1837, it would be nearly five years, and the amount of damages given by the jury for the detention of the property for that time, cannot be considered excessive; but even if such was the fact, unless it clearly appeared to the court

that the verdict of the jury was extremely unjust and wholly irreconcilable with the testimony, there would be no cause for a new trial on this ground, for it is expressly the province of the jury to determine facts and ascertain the amount of damages in actions of this kind; nor is a court bound to grant a new trial, because they might have differed in the verdict from the jury.

Upon the whole, there appears not to have been any such surprise on the part of the defendant, or any unjust or illegal advantage on behalf of the plaintiffs, or excessive damages given by the jury as would entitle the defendant to a new trial. It is the duty of the parties to come prepared for trial always upon the principal points, and new trials would be endless, and litigation never cease, if a party were permitted, on all occasions, by his own affidavit merely, to state that he had been surprised; that he thought he could discredit some witness; that he had found out he could prove something more than he had done on the first trial; or that he thought the finding against him was too large, and thereby obtain another chance. It is against the general rule to grant a new trial merely for this discovery of cumulative facts and circumstances relating to the same matter which was controverted upon the former trial. The court will not grant a new trial on the ground of the reception of improper evidence, when there is sufficient evidence without it to warrant the verdict. It is a matter of sound discretion with the court, in all cases, whether they will grant a new trial for excessive damages.

Did the court err in overruling the motion in arrest of judgment? The defendant assigned six reasons in arrest of judgment:

1. The declaration contains two counts that cannot be joined.

2. The first count is stated to be in right of Lucy Palmer.

3. The second in right of both parties without deriving right through Lucy Palmer.

4. The counts are in different rights, and cannot be joined.

5. The finding of the jury is defective and immoderate, and no judgment can be given thereon.

6. The whole declaration and finding of the jury is defective, informal, irregular, and the court cannot enter judgment.

The four first reasons may be considered as one, all of them going upon the ground of a misjoinder of parties.

MAY TERM,
1838.

Haile
v.
Palmer & iwfe.

The first count alleges the right in Lucy Palmer before marriage, and her right to the possession of the property; that the defendant came into the possession of the slaves and refused to deliver them to the said Lucy before her marriage, and also refused to deliver them to the plaintiff jointly since the marriage, &c.

In the second count the plaintiffs declare, jointly, in the usual form. There can be no misjoinder of parties in either count. A femme covert cannot in any case sue alone. She may, in all cases, join in an action with her husband, where the cause of action would survive to her, or where she is the meritorious cause of action, and she must join where the cause of action would necessarily survive to her—Chit. Plead. 17, 18, 60, 61. Here the cause of action survives to the wife necessarily, and for injuries to the person, personal or real property of the wife, committed before marriage. Where the cause of action would survive to the wife, she must join in the action, and if she die before judgment, the suit will abate. In this case the wife derives title under the will of her former husband, Ferguson Haile, and has a life estate in the property, remainder to her children forever; or, in fact, she might be considered a trustee, holding the property in trust for the legatees under the will, subject to the several provisions in the will. It will hardly be contended that Palmer, the husband, could sue alone for the property here devised, because he himself has only a limited estate during the life of his wife, and in the event of her death, his interest is immediately terminated; but not so in the event of his death, for then the wife would hold her life estate in the slaves during life, in exclusion of Palmer's heirs, and at her death the property would necessarily go to the children of Ferguson Haile, according to the provisions of the will, as before stated. Palmer, the husband, could not dispose of the slaves absolutely, or in any other way than to support and educate the children of Ferguson Haile during the lifetime of Lucy, his wife, by express provision and limitation in the will; but supposing the husband could sue alone, it does not follow that the wife could not join in the action under the peculiar circumstances of this case; but when the cause of action necessarily survives, (as in the present instance,) it would be error if she did not join; and if she were to die before judgment, the action would abate—Chit. Plead. p. 60.

As to the fifth reason assigned in arrest of judgment, that the verdict is defective, &c., I do not conceive

there is any force in it. The last reason is also answered before in the authorities and arguments relative to the first four reasons.

McGirk, Judge, delivered the opinion of the court.

Palmer and wife brought an action of detinue against Haile for several slaves. The defendant, Haile, pleaded *non detinet*, and several other pleas. A trial was had in the circuit court of St. Francois county, and verdict was given against Haile in gross for the value of the slaves, and also for damages. There are two counts in the declaration: the first count alleges that Palmer and wife complain that the wife, before the marriage, was possessed of the slaves, and lost them, and that Haile found them, and detained them against the wife before the marriage, and against both since the marriage.

The second count goes on the possession of the husband and wife since the marriage, and it alleges the detainer against both. On the trial, the plaintiff offered in evidence a sworn copy of a marriage register and certificate of a parish judge of Louisiana; and also a sworn copy of an inventory, and also a like copy of the registry of a will made in Louisiana, and the appointment of the wife as executrix under the will.

The defendant objected to the reception of the testimony, on the ground that these papers were not proved to be public documents. The court overruled the objection, and the papers were read in evidence. The defendant moved for a new trial and in arrest of judgment; these motions were overruled. The motion in arrest of judgment rests on the ground that the two counts contain causes of action which cannot be joined. The errors assigned, and all the points made, are clearly embraced in the two foregoing points.

I will proceed to consider the question, whether the court erred in receiving the sworn copies. The objection made to this evidence is, that it does not appear, by sufficient evidence, whether the originals, of which these papers are copies, by the laws of Louisiana, are required to be made matters of record at all. This objection appears to me to be well founded. One issue to be tried was, whether Palmer and wife were ever married. The proof adduced is this sworn copy; but whether or not this certificate, by the laws of Louisiana, can have any legal existence, has not been shown; and the rule of our law is that, where the law requires a paper to be recorded

*To render sworn copies of papers, purporting to be records, admissible, it must be shown that, by the laws of the State where such records are made, the papers are required to be recorded.*

27

and it is recorded, then a sworn copy is evidence, and for this see 1 Stark. 154; Bul. N. P. 229. And again, no copy of any paper on record is evidence, unless the law requires the paper or transaction to be made matter of record—see Peak's Evi. 231. This is sufficient as re- gards the marriage certificate. It seems, also, to be the rule regarding the inventory and other papers. The plaintiff also offered, and did read, a sworn copy of a will. This, as evidence of the existence of the will, is defective; also, for the same reason, the law of Louisiana should have been produced, by which it might be seen whether the original was made and established accord- ing to that law. The 19th section of the act of the general assembly of 1835, provides that citizens of any of the United States, or of the Territories thereof, owning lands or personal estate in this State, may devise and bequeath the same by last will and testament, executed and pro- ved according to the laws of this State, or the laws of the State where the same shall be made—M. C. 619. The sworn copy does not prove that the will was exe- cuted according to the laws of Louisiana; there is no proof what their laws require on this subject. On the admission of this evidence the court erred also. This disposes of the questions of evidence.

The next question is, ought the judgment to have been arrested? The first count goes on the right of the wife before marriage, and joins the husband with the wife.

Mr. Scott, of counsel for the plaintiff in error, con- tends that the husband in this case should sue alone, and to prove this, he cites and relies on the following authori- ties:—1 Chit. Plead. 60–1, 54, 119; 1 Bac. 502; 2 Bac. Abr. title "Detinue," 317; Bul. N. P. 50; H. Black. Rep. 108, and severrl other authorities of like kind. These are authorities which establish the doctrine that, in detinue for the goods of the wife, when the possession and find- ing was in the defendant before marriage and continued after the marriage, the husband alone can bring detinue; and the reason given for the thing is, that the law trans- fers the right, or (to use the exact expression of the books) transfers the property to the husband.

Although the cases are numerous, I feel bound to say I have not the least confidence in the legal correctness of the doctrine. The special cases are contrary to the gen- eral rule. The general rule is this, that in all cases where the meritorious cause of action existed in the wife before the marriage, and the marriage should give the thing to the husband when recovered, the wife must be joined in

the action; and when the causes of action would survive to her, she must be joined. To support this position, Mr. Brickey cites 1 Chit. Plead. 17, 18, 60–1. These last authorities satisfy me that when the inception of the cause of action was before marriage and the completion afterwards, they both may join, as in case of trover before marriage, and conversion afterwards; or the husband may sue alone for the conversion after the marriage. The first authorities cited from 1 Chit. 17 and 18, are entirely clear to me that the true criterion is, if the cause of action would survive to the wife, the husband and wife should and must join in the action; and why? Because, if the husband die before judgment, or even afterwards, and before the money is made, the right goes to the wife. Chitty says, on this point the authorities are contradictory. But the better opinion seems to be, that in all such cases the husband and wife must join. If this were an *action of trover*, the husband and wife might join—1 Chit. 62; or they might sever, and the husband sue alone. This is against the general rule, which requires the parties who have the legal interest to join in the suit. To let the husband sue alone is against the right secured to the wife of taking as survivor.

As to detinue, the books and cases say the husband must sue alone; and the reason given is, that the law transfers the property to the husband. Now, there is no truth in this reason. It is not then in law that when a wife possesses goods before marriage, and these goods are taken and retained from her before marriage, that on her marriage the goods or the right of them is vested in the husband. He may sue and recover them, and if he does this before the marriage is ended, and reduces them to possession or actually possesses the money recovered, then, and not before, the law transfers the right and property to him. This idea is supported by at least one hundred books. I take the cases above cited, to prove the husband alone can sue, to be cases against the law, and to be cases without reason—see some of the cases, Bacon, title "Detinue;" Bul. N. P. 53; Salkield, 114, Nolthrop & wife v. Evans.

I think, therefore, the first count in this declaration is good, and that in the case put by that count the husband cannot sue alone, and at any rate, if he can, as in the cases of trover, (1 Chit. 62,) it is no error to join the wife.

The next inquiry is as to the second count in the declaration. That count says the husband and wife were possessed as of their own proper goods, and that the de-

MAY TERM, 1838.

Haile
v.
Palmer & wife.

In cases of this kind, the declaration must show

<div style="margin-left:0">MAY TERM,
1838.

fendant detains them, &c. In my opinion this count is a count or case that cannot exist. If the property is in truth the property of the husband, then he alone could. in law be possessed. The property could not be the property of both, in any other sense than as joint tenants. But in regard to husband and wife joining in an action, the law requires the right of the wife to be stated, so that the court can see on the record what that right is— see 1 Chit. Plead. 20. It is said in all cases when the wife is joined with the husband, her interest must be expressly stated, and it must not arise by intendment. In this it can only be by intendment and supposition that she is joint tenant with her husband. This count is, as it stands, a count in right of the husband and wife as joint tenants, though in that respect bad; and the second is a count in regard to the right of the husband and wife; as such the right seems to me to be distinct. There is therefore a misjoinder of counts, and the judgment for this cause should have been arrested.

The remaining point is, whether the judgment should have been rendered on the verdict; the value being in the aggregate. On this point the law is with plaintiff in error—see several authorities, 1 Chit. 121-2; 2 W. B. 852; Bul. N. P. 51. The judgment is reversed, and the cause remanded for a new trial, with leave to amend.

TOMPKINS, Judge.—I concur in reversing the judgment for the reasons given, but believe that the husband ought to sue alone.

EDWARDS, Judge.—I concur in reversing the judgment in this case, for the reasons given, but I do not think that the wife must necessarily be joined in detinue. I think the husband may sue alone.